IN THE COURT OF APPEALS OF IOWA
No. 24-0124
Filed January 9, 2025

**IN THE INTEREST OF K.M.,**
**Minor Child,**

**M.S., Mother,**
    Petitioner-Appellee,

**D.M., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Mahaska County, Patrick McAvan, Judge.

A father appeals the private termination of his parental rights under Iowa Code chapter 600A (2023). **AFFIRMED.**

Michael S. Fisher of Fisher Law Office, New Sharon, for appellant.

Heather M. Simplot of Harrison, Moreland, Webber & Simplot, P.C., Ottumwa, for appellee.

Denise McKelvie Gonyea of McKelvie Law Office, Grinnell, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

A father last visited his son in May 2020.[1]  He last spoke with him no later than the end of 2021.  And since then, he has made no effort to contact his son by mail, phone, or any other means.  So when the mother petitioned to terminate the father's parental rights due to abandonment under Iowa Code chapter 600A—after warning the father she would do so—the juvenile court agreed.  It found that the father abandoned the son and that termination is in the son's best interest.  The father appeals, challenging both findings.

But on our de novo review, giving the juvenile court's factual findings their due weight, we find the father has not maintained substantial and continuous contact with the son since 2020.  And termination of the father's parental rights is in the son's best interest, especially considering the limited father-son relationship and the healthy environment now provided by the mother and her fiancé.  Thus, we affirm the juvenile court.

## I.    Background Facts and Procedural History

The mother and father have an eight-year-old son.  The three of them all lived together until the son was two years old.  After the father assaulted the mother in April 2017, the mother and the son moved out.  A few months later, the district court entered a stipulated custody order establishing joint legal custody and placing the son in the mother's physical care with "liberal visitation" for the father.

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public.  *Compare* Iowa Code § 600.16A (2023), *with id.* §§ 602.4301(2), 602.5110.

At first, the father often exercised his visitation rights with the son. He and his girlfriend at the time would care for the son every other weekend. This continued for around four or five months. But then the father and his girlfriend started experiencing relationship issues, and this led to the father not seeing the son as often. In 2019, the father only saw the son four times and in 2020 only three times.

The father was homeless at different points between 2017 and 2019. This also contributed to the lack of visitation between the father and the son. In 2018, he lost his job and started working a new job, but within a few months he stopped working altogether. In 2019, he started a new relationship with another woman. The father began actively using drugs with this woman, and he became addicted with his "drug of choice" being methamphetamine.

The father last visited the son in May 2020. Since then, he has not seen the son in person. The son continued to see his paternal grandfather, who used to supervise visits with the father and the son.

In October 2021, the father turned himself into the Poweshiek County Jail because he had outstanding warrants. In January 2022, the father was transferred to prison. The father was then paroled into a sober living house in Des Moines in April 2023. While there, one of the requirements of his parole was that he stay in Polk County. The father failed to abide by this requirement—staying at a friend's apartment with his girlfriend, rather than returning to the sober-living house. So his parole was revoked and he went back to prison again until November 2023.

The father is now living with the grandfather. The father testified that the last time he used methamphetamine was in July 2023. In prison, he completed

multiple treatment and education programs. The father has expressed that he hopes to continue those efforts, including participating in substance-use treatment.

The mother petitioned to terminate the father's parental rights in March 2023, alleging abandonment. *See* Iowa Code § 600A.8(3)(b) (2023). And after a termination hearing, the juvenile court terminated the father's parental rights. The court found that the mother proved that the father had abandoned the son—finding that the father failed to pay child support consistently and failed to have substantial and continuous or repeated contact and finding that the mother had not barred the father from having contact with the son. The court also found that it was in the son's best interest to have the father's parental rights terminated. The court reasoned that the father failed to "establish[] or maintain[] a place of importance in [the son's] life." It found no evidence that the son "is so closely bonded to [the father] that a termination of his parental rights would be detrimental to the child." And the court found that the mother and her fiancé provide a stable environment for the son. This conclusion was in line with the recommendation of the son's guardian ad litem, who testified that "[w]hile [the father] feels that he can present something in the future, I—unfortunately, . . . the past has belied that, and [the son] being a child, time is of the essence for him. He doesn't have the time to wait multiple years for this learning curve to happen."

The father now appeals.

## II.     Abandonment

Private actions to terminate parental rights are a two-step process. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). First, a petitioner must show "clear and convincing" evidence that one or more grounds for termination exists. Iowa Code

§ 600A.8. Second, they must prove that termination is in the child's best interests. *Id.* § 600A.1. We review these issues de novo, though "we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *B.H.A.*, 238 N.W.2d at 232 (cleaned up).

The juvenile court relied on the statutory ground of abandonment under section 600A.8(3). For a child who is at least six months old—like the son here—that section provides that "a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child." Iowa Code § 600A.8(3)(b). "[S]ubstantial and continuous or repeated contact" is "demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means" and by any one of three means of contact: (1) visiting at least monthly; (2) communicating regularly when unable to visit; or (3) "[o]penly living with" and "holding himself or herself out to be the parent of the child" during a six-month period in the year before the termination hearing. *Id.* § 600A.8(3)(b)(1)–(3). So section 600A.8(3)(b) has two distinct components—an economic component and a contact component—and the mother could prove abandonment by proving the father failed to satisfy either component. *See In re J.V.*, 13 N.W.3d 595, 604 (Iowa 2024). And a parent's subjective intent "does not preclude a determination that the parent has abandoned the child." Iowa Code § 600A.8(3)(c).

The juvenile court found that the mother proved abandonment under both the economic and contact components. Because we can affirm on either ground, we focus on the contact component. We agree with the court that clear and convincing evidence shows that the father has failed to visit monthly, communicate

regularly when unable to visit, or lived with the son for six months anytime during the more than three years from May 2020 to the November 2023 termination hearing.

The father argues that the mother put up "roadblocks" to keep him from seeing the son. But we find no evidence that the father was blocked or barred from seeing or speaking to the son. The father has not seen the son in person since May 2020 and has not talked to him since the end of 2020 or 2021.[2] The evidence shows that the father knew how to contact the mother and others in her life if he wanted to see the son. The mother and father both testified that the father was allowed to see the son at the grandfather's house. And the father testified that he has had "multiple chances throughout the years," and that the mother has tried to work with him on "multiple things" over the years. Yet because of the father's choices, he has been unable to see the son due to drug use, incarceration, or other relationships. Indeed, when asked by his counsel at the hearing if he felt that he had abandoned the son, the father replied, "I feel like I have, yeah."

We thus affirm the juvenile court's finding that the father abandoned the son under Iowa Code section 600A.8(3)(b).

### III.    Best Interest

The father also challenges the second step of the analysis—whether termination is in the son's best interest. He argues that "the record is insufficient

---

[2] The record is unclear when the father last spoke with the son. The mother testified that it was in December 2020 and the father says the same in his brief on appeal. But the father also testified he had "video visits a couple times" while he was in the Poweshiek County Jail without saying when those visits were. And he separately testified that he was in that jail at the end of 2021 before moving to prison. So the juvenile court found that the video visits were at the end of 2021.

to determine what is in the child's best interest" and contends that the juvenile court made "a cursory finding" that it was in the son's best interest to terminate his parental rights without citing any facts. We disagree.

When deciding the best interest of the son under chapter 600A, we must consider "whether a parent has affirmatively assumed the duties of a parent." *Id.* § 600A.1(2); *see B.H.A.*, 938 N.W.2d at 232. To that end, we may consider the father's "fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." Iowa Code § 600A.1(2). We also "borrow[] from the statutory best-interest framework outlined in Iowa Code chapter 232." *B.H.A.*, 938 N.W.2d at 232. So we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). And we will not delay security and permanency for the child "by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

Considering these factors, we agree with the juvenile court that termination is in the son's best interest. As thoughtfully reasoned by the juvenile court, the father has prioritized his relationship with women and drugs over his relationship with the son. He admitted as much in his testimony. He stated that his visitation with the son became less regular because of "relationship problems" with his girlfriend at the time. Rather than ending the relationship with that girlfriend, he stopped visiting the son. The father's parole was revoked because he chose to go

to his friend's apartment to be with a different girlfriend, even though he knew that this would violate parole and would lead him to go back to prison. And he stated that his drug addiction also led to him not making the son "his number one concern." Further, when asked at the hearing if he had been a parent to the son, he candidly responded "I have not been, no."

And the mother is able to provide a stable home for the son. She and her fiancé have reliable housing and income. The fiancé has expressed his desire to adopt the son. The son has also shown improved behavior since he has not had interactions with the father. Given the father's failure to assume the duties of a parent, and the stable environment that the son is in now, we agree with the juvenile court that it is in the son's best interest for the father's parental rights to be terminated.

**AFFIRMED**.